UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:13-CV-149-GNS

GEORGE MARION HARBIN                PLAINTIFF

v.

RYAN EAVES, RANDY WHITE, and
DENNIS YEAGER                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

All parties have filed motions for summary judgment. (DN 25, 26, 31). Response and reply briefs have been filed, and the deadlines for filing additional briefs have passed. All three motions are ripe for disposition. For the reasons outlined below, the Court: (i) grants Defendants Randy White and Dennis Yeager's Motion for Summary Judgment (DN 25); (ii) grants Defendant Ryan Eaves's Motion for Summary Judgment (DN 26); and (iii) denies Plaintiff's Motion for Summary Judgment (DN 31).

### I. SUMMARY OF FACTS AND CLAIMS

Plaintiff George Marion Harbin ("Harbin") is an inmate at the Kentucky State Penitentiary at Eddyville, Kentucky. He brings this action under 42 U.S.C. § 1983, alleging three employees of the penitentiary violated his Eighth Amendment rights in using excessive force and failing to protect him from the use of excessive force. (Compl., DN 1).

The incident giving rise to his claims occurred on March 15, 2013. Harbin and Defendants' account of the events that day are surprisingly similar. On that date, Harbin and a fellow inmate were conversing as he waited for a disciplinary proceeding. One of the defendants, Corrections Officer Ryan Eaves ("Eaves"), demanded the inmates stop talking. (Compl. 4; Extraordinary Occurrence Report 2, DN 1-3). When Harbin did not, Eaves began to escort him

1

back to his cell. *Id.* All parties agree Harbin initially obliged this escort but then hesitated in returning to his cell. *Id*. Harbin says he paused to gain the attention of the officers in the disciplinary proceedings and to alert them to his departure when Eaves "roughly and aggressively" grabbed his arm. (Compl. 2). While Defendants provide different detail, they agree Eaves tried to assert control physically. (Extraordinary Occurrence Report 2) (noting that "Officer Eaves placed his hands on inmate Harbin's handcuffs . . . ."). After this, Plaintiff admits he "yanked away." (Inmate Grievance Report 2, DN 1-5). The Occurrence Report's characterization is more detailed reflecting that Harbin resisted with both a verbal expletive and physical recoil. (Extraordinary Occurrence Report 2, DN 1-3). Harbin alleges he was then slammed into a wall and punched in the jaw several times. (Compl. 4). The Occurrence Report confirms a move to the wall though omits any mention of punches. (Extraordinary Occurrence Report 2). As a result of Eaves's actions Harbin contends that he received a golf-ball sized bruise on his arm and a one-inch laceration. (Compl. 3). The medical reports confirm a bruise and one-inch "scratch." (Progress Notes, Mar. 16, 2013, DN 1-3).

Eaves moves for summary judgment as to the claims against him. (DN 26). Harbin's allegations against the other defendants, the prison warden and an internal affairs investigator, allege their failure to prevent the foreseeable use of excessive force. Harbin contends that Warden Randy White ("White") was aware of previous complaints against Eaves and should have taken proactive steps to prevent Harbin's injuries. Harbin also alleges that Dennis Yeager ("Yeager") as "head of internal affairs" must have also been aware of previous complaints. As with the warden, Harbin contends Yeager should have taken action to prevent his injuries. White and Yeager have jointly moved for summary judgment on the claims against them. (DN 25). Defendants admit the use of force in the encounter but contend even if Harbin's allegations are

assumed true, they do not amount to the excessive use of force and consequently no dereliction of any duty to protect.

Finally, Harbin has also moved for summary judgment. (DN 31).

## II.   STANDARD

Summary judgment is available when the record demonstrates "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Citations to materials in the record, including documents, admissions, and affidavits, may demonstrate a genuine factual dispute, or the lack thereof. Fed. R. Civ. P. 56(c). Not all disputed facts prevent summary judgment, however. Only disputes over material facts as identified by the governing substantive law preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, material facts must present a genuine dispute "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.   DISCUSSION

"The Eighth Amendment prohibits punishments that 'involve the unnecessary and wanton infliction of pain,' including inflictions of pain that 'are totally without penological justification.'" *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Lockett*, 526 F.3d at 875 (citing *Whitely v. Albers*, 475 U.S. 312, 321 (1986)). No physical injury, however, is required for Eighth Amendment violations. *Boretti v. Wiscomb,* 930 F.2d 1150, 1154-55 (6th Cir. 1991). The Supreme Court has recognized use of *de minimis* force by prison officials falls outside the Eighth Amendment's protections against excessive force. *Wilkins v. Gaddy*, 559 U.S.

34, 37-38 (2010). "This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry." *Id.* at 38. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id.*

Under the Eighth Amendment, prison officials must also provide for the "reasonable safety" of inmates. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Thus, prison officials may be held liable under Section 1983 without actively participating in any excessive use of force. *See, e.g.*, *Sutherland v. Fernando*, No. 1:09-CV-02152-LJO, 2011 WL 2457937, at *1 (E.D. Cal. Apr. 28, 2011), *report and recommendation adopted*, 2011 WL 2433634 (E.D. Cal. June 16, 2011). To establish liability for a failure to protect, a prisoner must demonstrate the prison officials' "deliberate indifference to a substantial risk of harm." *Farmer*, 511 U.S. at 828. *See, e.g.*, *Curry v. Scott*, 249 F.3d 493, 505-06 (6th Cir. 2001).

### A. <u>Eaves is entitled to summary judgment because the force used was not excessive.</u>

In the Complaint, Harbin alleges that Eaves used excessive force against him. (Compl. 4). To prove excessive force, there are separate objective and subjective elements of the claim. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In this case, there is insufficient evidence against Eaves to survive summary judgment under either element.

Under the objective component, the issue is "whether the pain inflicted was 'sufficiently serious,' and that component is met when force is used maliciously and sadistically to cause harm whether or not significant injury is evident." *Booher ex rel. T.W. v. Montavon*, 555 F. App'x 479, 483 (6th Cir. 2014) (citation omitted). In *Wilkins v. Gaddy*, the Supreme Court clarified the standard for a claim of excessive force arising under the Eighth Amendment. *See Wilkins*, 559 U.S. at 37-38. The Court held that a plaintiff does not have to show a "significant

4

injury" as a threshold requirement for alleging an excessive force claim. *See id.* at 37(citation omitted). As this Court stated post-*Wilkins*, however:

> [T]his is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Gordon v. Joyner*, No. 3:08CV-P667-H, 2010 WL 3001967, at *5 (W.D. Ky. July 28, 2010) (internal quotation marks omitted) (citations omitted). *See also Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) ("Every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action and a prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim." (citations omitted)).

There is conflicting evidence concerning the amount of force used. The Occurrence Report indicates Eaves "attempted to place Inmate Harbin against the wall for control" before another officer responded to the sounds of a scuffle. (Extraordinary Occurrence Report 2, DN 1-3). The Report indicates this encounter ending with Harbin on the floor. (Extraordinary Occurrence Report 2). A supervising officer told Eaves to leave the area while the intervening officer and another assisted Harbin to his feet and, eventually, a cell. (Extraordinary Occurrence Report 2). Harbin's contrasting description includes punches and more condemning language and is generally corroborated in the internal affairs investigation. (Pl.'s Resp. to Mot. for Summ. J. 3, DN 44). During the course of that investigation, two officers reported witnessing Eaves strike Harbin's head, which contradicts Eaves' account in the Occurrence Report. (Pl.'s Resp. to Mot. for Summ. J. Ex. A).

Summary judgment is still appropriate, however, if the disputed amount of force is immaterial. Taking Harbin's version of the facts as true and in the light most favorable to him,

5

Harbin's version of events recounts an altercation between Harbin and Eaves beginning with Harbin admittedly ignoring Eaves' direction, which prompted Eaves' decision to escort Harbin back to his cell before his disciplinary hearing. It was then that Harbin resisted physically, leading to Eaves' use of physical force. Harbin apparently determined that he needed to advise others of his departure in contravention of Eaves' instructions. The key point here is that Eaves was in charge; Harbin was bound to follow Eaves' directions. Harbin's account demonstrates an escalation of force given continuing insubordination: first a warning, then returning the inmate to his cell, before finally a physical response became necessary. After the incident, Harbin's only medical complaint—reported not when checked immediately after the incident but several hours later—was a golf-ball sized bruise next to his armpit and a one-inch scratch." (Progress Notes, Mar. 15, 2013, DN 1-4). A bruise and a scratch—even assuming Harbin's version of events—hardly reflect that the amount of force was constitutionally excessive.

      Other courts have reached similar conclusions. In *Gordon v. Joyner*, a prison guard struck a prisoner in the chest causing redness and swelling. *See Gordon* 2010 WL 3001967, at *6. The prisoner was later examined by a nurse and determined that he should be treated with ice and pain-killers. *See id.* In rejecting the prisoner's excessive force claim, this Court concluded that the redness and swelling coupled with the limited medical treatment received by the prisoner were insufficient evidence to support the claim. *See id.* (citing *Jarriett v. Wilson*, 162 F. App'x 394, 400-01 (6th Cir. 2005); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). *See also Barclay*, 477 F. Supp. 2d at 554 (granting summary judgment for the corrections officers on plaintiff's allegations that they caused him "some discomfort or pain and some scratches and bruising, that amount of force was justified by the need to restore discipline, secure plaintiff, and obtain medical assistance for him.").

Similarly, in *Ramos v. Samaniego*, No. EP-07-CA-320-FM, 2008 WL 3539252 (W.D. Tex. July 24, 2008), a prisoner alleged, *inter alia*, that a corrections officer used excessive force, which included "twisting [the prisoner's] wrists, while handcuffed, and slamming his head against a door, causing a swollen bump on his forehead, a headache, and dizziness." *Id.* at *6. The court, however, found that those injuries were *de minimis* in dismissing the claim. *See id.* at *6. *See also Parks v. Anderson*, No. 6:10-355-GFVT, 2014 WL 4854570, at *43 (E.D. Ky. Sept. 29, 2014) (citing *Ramos*).

In contrast to the objective component, the subjective component examines the prison officials themselves. "Not every push or shove . . . violates a prisoner's constitutional rights." *Barclay v. New York*, 477 F. Supp. 2d 546, 553 (N.D.N.Y. 2007) (alteration in original) (internal quotation marks omitted) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Rather, "[t]he relevant inquiry is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citation omitted). In determining the good faith of prison officials, courts consider "'such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted,' as well as 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.'" *Cordell v. McKinney*, 759 F.3d 573, 581 (6th Cir. 2014) (alteration in original) (quoting *Whitley*, 475 U.S. at 321).

Courts recognize the precariousness of second-guessing prison officials' decisions, made "in haste, under pressure, and frequently without the luxury of a second chance." *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (internal quotation marks omitted) (quoting

*Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). It is for this reason that good faith is the ultimate standard against which prison guards' use of force is judged. In evaluating good faith, courts consider "whether the use of force could plausibly have been thought necessary . . . ." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Whitley*, 475 U.S. at 321).

Based upon the evidence in the record, the escalation of Eaves' responses as Harbin continued to resist, combined with the minimal force used, the Court concludes that Eaves used permissible force to regain control over Harbin. In sum, Harbin's resistance to Eaves prompted the need for some force. Given the *de minimis* injuries, it cannot reasonably be concluded that Eaves' response showed lack of good faith or a malicious and sadistic intent to cause harm to Harbin.

For these reasons, Harbin has failed to prove that the use of force by Eaves violated the Eighth Amendment's prohibitions against cruel and unusual punishment. Eaves is entitled to summary judgment on this claim.

### B.     White lacked actual knowledge of any risk of harm.

Given the fact that no constitutional violation occurred, the supervisory claim also fails. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor."). Even if Eaves did violate Harbin's constitutional rights, there is no viable claim against White. In asserting claims against White, Harbin alleges that White is liable for the violation of Harbin's rights because White knew of Eaves's alleged violent propensities towards inmates. (Compl. 6). Harbin further alleges that Eaves's knowledge amounts to deliberate indifference. (Compl. 6).

The "deliberate indifference" standard encompasses both the subjective and objective components of the claim against White. *Curry*, 249 F.3d at 506. It is the subjective component, however, that differs from the analysis used to evaluate the constitutional violation by aggressors. To prove this claim, Plaintiff must demonstrate White possessed "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation omitted) (internal quotation marks omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A prison official can be liable if he 'disregards that risk by failing to take reasonable measures to abate it.'" *Curry*, 249 F.3d at 506 (citation omitted). A plaintiff may prove actual knowledge and the requisite inference in the usual ways, including circumstantial evidence. *Id.*

As evidence of this claim, Harbin relies upon two previous instances where complaints of excessive force were lodged against Eaves. (Compl. Ex. A, DN 1-1; Compl. Ex. B, DN 1-2). While Defendants admit these complaints were filed, the subsequent investigations into the use of force found the complaints to be meritless. (White Aff. 1, DN 25-2; Cooper Mem., DN 25-3; Sublett Mem., DN 25-4). Harbin does not allege the investigations were inadequate, improper, or indicated that Eaves presented an ongoing danger to prisoner safety. Accordingly, Harbin has failed to demonstrate White had actual knowledge of a substantial risk of harm, which warrants the entry of summary judgment in White's favor.

C. **Yeager had no actual knowledge of a substantial risk of serious harm.**

Harbin's claim against Yeager also will be dismissed in light of the failure of a claim against Eaves. *See McQueen*, 433 F.3d at 470. Even if the Court considers the merits of this claim, Harbin alleges that Yeager violated his constitutional rights because Yeager purportedly had knowledge of Eaves' history of alleged violence towards inmates. (Compl. 6-7). According

to White's Affidavit, Yeager headed the prison's internal affairs unit from December 2012 to January 2013. (White Aff. 1). During this time period, that unit appears to have conducted the investigations that Plaintiff relies upon as evidence of actual knowledge. These are the same investigations that reportedly concluded Eaves had done nothing improper. Thus, it appears that Yeager similarly lacked actual knowledge of any risk of harm posed by Eaves.

Yeager also appears to have been involved in the investigation of the incident giving rise to this case. Plaintiff submitted evidence in which Yeager appears to have interviewed Eaves on the day of the incident. (Pl.'s Resp. to Mot. for Summ. J. Ex. A, DN 44-1). Any knowledge of danger learned from this investigation, however, was learned after the incident. Plaintiff has submitted no other evidence that Yeager had knowledge that Eaves presented a danger to inmate safety before the incident at issue in this case. Accordingly, the Court will also dismiss the claim asserted against Yeager.

### D.     Plaintiff's motion for summary judgment is denied.

Plaintiff has also moved for summary judgment. (DN 31). As additional evidence, he submits the affidavit of another inmate who purports to have witnessed the incident. (Banks Aff., DN 31-1). This affidavit, while supporting Plaintiff's version of events, does not resolve the factual disputes before the Court. *Pro se* Plaintiff's memorandum in support of his motion exhibits an understandable lay misapprehension of the summary judgment standard. He argues forthcoming evidence will further corroborate his allegations. This evidence is not before the Court nor properly considered. Plaintiff's motion (DN 31) is DENIED.

### IV.     CONCLUSION

The remaining dispute as to the amount of force is immaterial because even Harbin's more severe version of events does not constitute excessive force under the Eighth Amendment.

10

Even were this excessive force, it is undisputed neither Yeager nor White had knowledge of any violent tendencies of Eaves, should they exist, or were otherwise aware of the threat of serious harm to Plaintiff. Yeager and White's motion and Eaves' motion will be granted. Accordingly, Plaintiff's Motion for Summary Judgment (DN 31) is **DENIED**. Defendants' Motions for Summary Judgment (DN 25, 26) are **GRANTED**.

Greg N. Stivers, Judge
United States District Court

June 11, 2015

cc: counsel of record
Plaintiff, *pro se*